1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                                    DISTRICT OF NEVADA

8                                            * * *
                                               )
9   KAI WEAVER, on Behalf of Herself and all    )
    Others Similarly Situated,                   )
10                                               )          3:08-CV-00037-LRH-VPC
                         Plaintiff,              )
11                                               )
    v.                                           )          ORDER
12                                               )
    AETNA LIFE INSURANCE COMPANY and )
13  WESTERN INSURANCE SPECIALITIES,              )
                                                 )
14                       Defendants.             )
                                                 )
15  _____      )

16         In this case, Plaintiff Kai Weaver, on behalf of herself and all others similarly situated,

17  seeks restitution of premiums she and others paid to Defendants Aetna Life Insurance Company

18  ("Aetna") and Western Insurance Specialities ("Western").  Plaintiff grounds this request for relief

19  upon Defendants alleged illegal behavior in providing life insurance policies.  Because Plaintiff

20  lacks standing to bring the claims asserted in counts one through three of her complaint, and she

21  fails to state a claim in counts four through six, the court grants Defendants' present motions to

22  dismiss (#13[1] & #14).

23  **I.      Facts and Procedural History**

24         In 2004, Defendants Aetna and Western agreed Aetna would take over a group life

25

26
    _____
    [1]Refers to the court's docket

1    insurance policy previously issued by Hartford.  Aetna would provide the insurance while Western

2    would provide for the policy's administration.  The policy purported to insure the lives of various

3    employees and retirees and their eligible spouses and children within the Public Employees'

4    Retirement System of Nevada ("PERSN") and the University and Community College System of

5    Nevada ("UCCSN").  Aetna and Western did not disclose to any inureds that the life insurance was

6    being transferred from Hartford to Aetna.

7         Aetna and Western have represented that the policyholder of the PERSN policy was the

8    Public Employees Voluntary Life Plan and that the policyholder of the UCCSN policy was the

9    University and Community College System of Nevada Voluntary Life Plan.  Aetna and Western

10   also represented that the effective date of these policies was September 1, 2004, and that both

11   policies were issued and delivered to the designated policyholder.  However, from September 2004

12   through mid-December 2006, Aetna did not write a group life insurance policy for the PERSN and

13   UCCSN group policies or issue individual certificates of insurance to the insureds.  In fact, the

14   purported group policyholders, Public Employees' Voluntary Life Plan and the University and

15   Community College System of Nevada Voluntary Life Plan, did not exist.  Aetna and Western

16   received at least $11 million in premiums from sale of the policies.

17        Plaintiff Kai Weaver was formerly employed as a Deputy Sheriff for Douglas County,

18   Nevada.  During this employment, she purchased life insurance from Aetna and Western as a

19   member of PERSN.  Plaintiff purports to bring this action on behalf of herself and as a

20   representative of a class of similarly situated persons.  This class includes those who made

21   payments to Aetna and Western for a group policy that was to be issued to PERSN and UCCSN.

22   Plaintiff excludes from the class "all beneficiaries or other persons who received any payment from

23   [Western] or [Aetna] arising from a claim for insurance benefits."  In her First Amended

24   Complaint, Plaintiff asserts six counts: (1) Breach of Fiduciary Duty, (2) Civil Conspiracy, (3)

25   Unjust Enrichment, (4) Negligence, (5) Violation of Nevada's Racketeering Statutes, and (6)

26

2

1  Deceptive Trade Practices.

2  **II.    Discussion**

3        **A.  Standing**

4        Both Defendants Aetna and Western move for dismissal on the basis that Plaintiff lacks

5  standing to bring this action.  Consideration of standing as a threshold matter is appropriate, as

6  standing goes to this court's jurisdiction to hear this matter under Article III of the United States

7  Constitution.

8        In *Lujan v. Defenders of Wildlife*, the Supreme Court set forth the constitutionally required

9  elements of standing:

10      First, the plaintiff must have suffered an "injury in fact"–an invasion of a legally
        protected interest which is (a) concrete and particularized and (b) actual or imminent, not
11      "conjectural" or "hypothetical" . . . . Second, there must be a causal connection between
        the injury and the conduct complained of–the injury has to be fairly . . . trace[able] to the
12      challenged action of the defendant, and not . . . th[e] result [of] the independent action
        of some third party not before the court.  Third, it must be "likely," as opposed to merely
13      "speculative," that the injury will be redressed by a favorable decision.

14  504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).  "The party invoking

15  federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.  Since Defendants

16  challenge Plaintiff's standing in a motion to dismiss, general factual allegations of injury resulting

17  from Defendants' conduct may suffice, because this court presumes that general allegations

18  embrace those specific facts that are necessary to support a claim. *See id.*

19      Because Plaintiff asserts six counts in her first amended complaint–and correspondingly six

20  claims for relief–Plaintiff must demonstrate standing for each claim she seeks to press. *See*

21  *DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  This court will consider counts one

22  through three–(1) breach of fiduciary duty, (2) civil conspiracy, and (3) unjust enrichment–before

23  considering counts four through six–(4) negligence, (5) violation of Nevada's Racketeer Influenced

24  and Corrupt Organizations ("RICO") statutes, and (6) violation of Nevada's Deceptive Trade

25  Practices Act.

26

1              **1.      Counts One Through Three**

2          Each of the claims Plaintiff asserts within counts one through three centers upon her

3   allegation that she was injured by paying premiums for a nonexistent or illegal insurance policy.

4   (*See also* Opp'n to Mot. to Dismiss (#18) at 15) ("[Plaintiff's] injury in fact is the payment of

5   premium for coverage under a group insurance policy that did not exist."). Of course, an economic

6   injury is sufficient to satisfy the Article III standing requirement of injury-in-fact. *See Clinton v.*

7   *City of New York*, 524 U.S. 417, 432-33 (1998). This observation does not dispose of the issue,

8   however. For instance, a consumer could claim she experienced an injury of five dollars in the

9   purchase of a widget. But this claim begs the question of what the consumer received in return.

10  That is, did the consumer fail to receive the widget, or did she receive exactly what she bargained

11  for? If the consumer received the bargained-for widget, she could not claim a cognizable injury

12  under Article III.

13         The United States District Court for the Central District of California considered a similar

14  claim in *Impress Communications v. Unumprovident Corp.*, 335 F. Supp. 2d 1053 (C.D. Cal.

15  2003). In *Impress*, two plaintiffs filed a class action against a number of defendants for defrauding

16  plaintiffs into joining group and individual disability insurance plans. *Id.* at 1055-56. The

17  plaintiffs claimed the defendants did not intend to provide the coverage as promised in the plans.

18  *Id.* at 1056. In support of this allegation, the plaintiffs claimed the defendants engaged in unlawful

19  and wrongful acts, including (1) instituting goals for cost savings through denial of claims, (2)

20  providing financial incentives for doctors to deny claims, (3) implementing bonus plans rewarding

21  company management for denying as many claims as possible, and (4) employing practices that

22  pressure claims handlers to deny claims without giving them a proper review. *Id.* Critically,

23  however, the plaintiffs did not allege that they filed claims under the policies or that they were

24  denied any benefits. *Id.* at 1055-56. Nevertheless, the plaintiffs sought damages, restitution,

25  disgorgement of profits, injunctive relief, and attorneys' fees. *Id.* at 1056. The court held that the

26
                                              4

1   plaintiffs failed to allege an Article III injury because they did not allege that they had been

2   provided with less coverage than they contracted for. *Id.* at 1059. The court found that "[a]n

3   allegation that [the defendants'] administration of the plan might result in denial of future benefits

4   is purely speculative" and did not suffice to confer standing on the plaintiffs. *Id.*

5         Similarly here, while counts one through three allege Plaintiff paid premiums for a

6   nonexistent policy–seemingly an injury-in-fact–one could not deem a policy nonexistent unless she

7   were improperly denied benefits. Any other claim of a "nonexistent" policy ventures into the

8   metaphysical, as one cannot know whether a policy exists until availing oneself of its benefits.

9   Plaintiff faces this dilemma while seeking to distinguish *Impress*:

10         The *Impress* Plaintiffs . . . did not suffer an injury-in-fact because they never filed claims
              under the policies or were denied any benefits sought. However, in this case, Ms.

11         Weaver alleges that no group life policy was legally formed. Thus, the allegations
              concern the formation of the contract. If a group insurance policy was not formed, the

12         remedy available is a return of the premium.

13   (Supp. to Opp'n to Def.'s Mot. to Dismiss (#30) at 3.) Plaintiff's argument fails to show she has

14   experienced an injury-in-fact because, by paying premiums, she was not bargaining for the

15   "formation of the contract." Rather, any contract formation between Plaintiff and Defendants

16   would have been accomplished by payment of premiums in return for a promise of benefits.[2]

17         Plaintiff also makes various references to an illegal contract in her complaint. Indeed,

18   Plaintiff alleges Defendants failed to comply with requirements imposed by Nevada Revised

19   Statues concerning insurance policies. In certain circumstances, restitution is warranted from the

20   recipient of performance under an illegal contract. *See* Restatement (Third) of Restitution & Unjust

21   Enrichment § 32 (2004). The appellation "illegal" here is misleading, however, because not all

22   contracts are unenforceable by reason of an illegality. *See* Restatement (Second) of Contracts § 178

23   (1981). More importantly, Plaintiff has not alleged that any court has refused to compel

24

25         [2]Whether the parties have an enforceable contract is not before this court, as Plaintiff is not contending
any performance from Defendants is due.

26

5

1   Defendants' performance on the basis that the parties entered into an illegal contract.  Plaintiff has

2   therefore failed to show an injury-in-fact as to counts one through three.[3]

3           **2.      Counts Four Through Six**

4           In counts four through six of the first amended complaint–which assert claims for

5   negligence, violation of Nevada's RICO statutes, and deceptive trade practices–Plaintiff claims

6   Defendants made various misrepresentations concerning its insurance policies.  In support of these

7   allegations, Plaintiff contends Defendants sold policies using a document called "HIGHLIGHTS

8   OF THE PLAN," which indicates,

9           This brochure is only a brief description of benefits and not a contract of insurance.
            Terms of coverage are set forth in the Master Group Policy issued to P.E.R.S. [or
10          UCCSN] by Aetna Life Insurance Company.

11  (First Am. Compl. (#1) Ex. A at 5.)  As stated previously, Plaintiff alleges Defendants knew there

12  was no Master Group Policy issued to PERSN or UCCSN.  The court concludes these allegations

13  are sufficient at the pleading stage to show Plaintiff suffered an injury-in-fact. *See Havens Realty*

14  *Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (finding an injury-in-fact when the plaintiff

15  received false information concerning whether certain apartments were available for rent).

16          **B.  Failure to State a Claim**

17          The court's finding of injury-in-fact as to counts four through six does not end the matter,

18  however.  Aetna has also moved to dismiss counts four through six on the basis that Plaintiff fails

19  to state a claim under Federal Rule of Civil Procedure 12(b)(6).

20          In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken

21  as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v.*

22  _____

23          [3]Plaintiff also lacks standing to assert injunctive relief for her claims within counts one through three.
    To seek injunctive relief she must show she "has sustained or is immediately in danger of sustaining some
24  direct injury as the result of the challenged . . . conduct and the injury or threat of injury must be both real and
    immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal
25  quotation marks omitted).  For the same reasons Plaintiff has not alleged an injury arising from Defendants'
    past actions, Plaintiff's allegations do not show Defendants' alleged illegal behavior poses an real and
26  immediate threat of injury to her interests as an insured.

1  *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, a court

2  does not necessarily assume the truth of legal conclusions merely because they are cast in the form

3  of factual allegations in a plaintiff's complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d

4  752, 754-55 (9th Cir. 1994).

5        There is a strong presumption against dismissing an action for failure to state a claim.  *See*

6  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is

7  not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence

8  in support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

9  *grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  However, a plaintiff's obligation to

10  provide the grounds of her entitlement to relief requires more than labels, conclusions, and a

11  formulaic recitation of the elements of the cause of action.  *Bell Atlantic Corp. v. Twombly*, 127

12  S.Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the

13  speculative level on the assumption that all the allegations in the complaint are true (even if

14  doubtful in fact)."  *Id*. (internal citations omitted).

15        **1.    Count Four**

16        Defendants argue Plaintiff fails to state a claim in count four, a negligence claim, because

17  she does allege any damages.  The court agrees. Damages is an essential element of a negligence

18  claim. *See Szekeres v. Robinson*, 715 P.2d 1076, 1079 (Nev. 1986).  For the same reasons Plaintiff

19  has not shown an Article III injury with respect to counts one through three, Plaintiff has also not

20  claimed any damages due to Defendants' conduct.

21        **2.    Count Five**

22        Defendants also move for dismissal of Plaintiff's Nevada RICO claim, arguing Plaintiff has

23  not shown an injury within the meaning of Nevada Revised Statutes section 207.470(1).  That

24  subsection states, "Any person who is injured in his business or property by reason of any violation

25  of [Nevada's RICO statute] has a cause of action against a person causing such injury for three

26

7

1   times the actual damages sustained." Nev. Rev. Stat. § 207.470. The court agrees that Plaintiff has

2   failed to state a civil RICO claim.

3         Nevada courts have interpreted the Nevada's RICO statute consistently with the provisions

4   of the federal RICO statute. *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994); *see also*

5   *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 298 n.2 (Nev. 1993) (noting that Nevada's RICO

6   statutes are patterned after the federal RICO statutes). As such, Plaintiff must show a harm to a

7   specific business or property interest in order to state a claim. Again, for the reasons noted in this

8   court's analysis with respect to Plaintiff's standing as to counts one through three, Plaintiff has

9   failed to do so. *See also Maio v. Aetna, Inc.*, 221 F.3d 472, 488 (3d Cir. 2000) (holding that the

10   plaintiff failed to state an injury under the federal RICO statutes because she did not suffer a

11   financial loss resulting from the defendants' allegedly inferior HMO plan).

12         **3.**      **Count Six**

13         Finally, Defendants argue Plaintiff cannot recover under Nevada's Deceptive Trade Practice

14   Act because she is not a "victim" within the meaning of Nevada Revised Statutes section 41.600.

15   Nevada Revised Statutes section 41.600 provides, "An action may be brought by an person who is

16   a victim of consumer fraud. As used in this section, 'consumer fraud' means: . . . A deceptive trade

17   practice as defined in NRS 598.0915 . . . ." The term "victim" in section 41.600 is not defined.

18   Moreover, no Nevada case law has ventured to offer a definition. Therefore, this court must predict

19   how the Nevada Supreme Court would decide this issue "using intermediate appellate court

20   decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."

21   *Arizona Elec. Power Co-op v. Berkely*, 59 F.3d 988, 991 (9th Cir. 1995).

22         Although not addressing section 41.600, the Nevada Supreme Court has defined "victim" as

23   the term is used in Nevada Revised Statutes section 176.033(c), which authorizes restitution for a

24   crime victim. The court addressed the issue in *Igbinovia v. State*, 895 P.2d 1304 (Nev. 1995),

25   where it held that the Las Vegas Metropolitan Police Department was not a "victim" that could

26

1  receive restitution for money used to purchase illegal drugs in a sting operation. *Id.* at 1039.  While

2  noting the term was undefined, the court found that "the word 'victim' has commonly-understood

3  notions of passivity, where the harm or loss suffered is generally unexpected and occurs without the

4  voluntary participation of the person suffering the harm or loss." *Id.* at 1038.  Of course, in the

5  present case, whether Plaintiff was passive in her interactions with Defendants is not in issue.

6  Nonetheless, the *Igbinovia* court's definition of "victim" is still significant because of its inclusion

7  of the terms "harm or loss," which connote that a victim must experience some damage as a result

8  of an offender's actions.

9      Here, Plaintiff has made no such allegation.  She does not allege that she was induced to

10  participate in Defendants' policy after reading the "HIGHLIGHTS OF THE PLAN" document or

11  that she was otherwise harmed by the absence of the Master Group Policy referenced in the

12  document.  Accordingly, the court concludes that Plaintiff has not raised a right to relief above the

13  speculative level and has therefore failed to state a claim.  Aetna's motion to dismiss counts four

14  through six pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.

15      **C.  Leave to Amend**

16      Defendants have asked this court to dismiss Plaintiff's complaint with prejudice, arguing

17  that any amendment would be futile.  The court is unsure how Plaintiff could amend her complaint

18  to remedy its current defects.  However, upon the current record the court cannot say as a matter of

19  law that it is clear that the complaint could not be saved by amendment.  *See Gompper v. VISX,*

20  *Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).  Accordingly, the court will dismiss the first amended

21  complaint without prejudice.

22  **III.    Conclusion**

23      With respect to Plaintiff's claims for breach of fiduciary duty, civil conspiracy, and unjust

24  enrichment, Plaintiff has failed to show she suffered an injury-in-fact that would confer standing

25  under Article III of the Constitution.  In regard to Plaintiff's claims for negligence, violation of

26

1   Nevada's RICO statute, and deceptive trade practices, she has failed to state to a claim upon which

2   relief can be granted.  Defendants' motions to dismiss are therefore granted.

3          IT IS THEREFORE ORDERED that Defendant Western's Motion to Dismiss (#13) is

4   GRANTED.

5          IT IS FURTHER ORDERED that Defendant Aetna's Motion to Dismiss (#14) is

6   GRANTED.

7          IT IS FURTHER ORDERED that Plaintiff's Motion to Certify Class (#23) is DENIED as

8   moot.

9          IT IS SO ORDERED.

10         DATED this 3rd day of November, 2008.

11

12                                                    _____

                                                     LARRY R. HICKS
13                                                   UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26